1
2
3
4
5
6                        UNITED STATES DISTRICT COURT

7                              DISTRICT OF NEVADA

8                                     * * *

9    MAX REED, II,                           Case No. 3:14-cv-00313-MMD-VPC

10                            Plaintiff,                  ORDER

11          v.

     NEVADA DEPARTMENT OF
12   CORRECTIONS, et al.,

13                            Defendants.

14

15          Plaintiff, who is a prisoner in the custody of the Nevada Department of

16   Corrections ("NDOC"), has submitted a motion requesting leave to file a first amended

17   complaint, a proposed amended complaint, and a motion for reconsideration. (Dkt. no.

18   26, 26-1, 27.)  In a previous order, this Court granted Plaintiff's application to proceed *in

19   forma pauperis* and served a copy of Plaintiff's original complaint upon the Office of the

20   Attorney General. Defendants have not responded to the original complaint. The Court

21   now screens Plaintiff's amended civil rights complaint pursuant to 28 U.S.C. § 1915A.

22   **I.      SCREENING STANDARD**

23          Federal courts must conduct a preliminary screening in any case in which a

24   prisoner seeks redress from a governmental entity or officer or employee of a

25   governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any

26   cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a

27   claim upon which relief may be granted or seek monetary relief from a defendant who is

28   immune from such relief. *See* 28 U.S.C. § 1915A(b)(1),(2). *Pro se* pleadings, however,

must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, pursuant to the Prison Litigation Reform Act (PLRA), a federal court must dismiss a prisoner's claim, if "the allegation of poverty is untrue," or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint, and the court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id.*

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Finally, all or part of a complaint filed by a prisoner may therefore be dismissed *sua sponte* if the prisoner's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

## II.   SCREENING OF AMENDED COMPLAINT[1]

In the amended complaint, Plaintiff sues multiple defendants for events that took place while Plaintiff was incarcerated at Ely State Prison ("ESP") and Northern Nevada Correctional Center ("NNCC"). (Dkt. no. 26-1 at 1, 6.) Plaintiff sues Defendants NDOC Director James Cox, ESP Warden Renee Baker, ESP Associate Warden Adam Watson, ESP Associate Warden Mike Byrnes, ESP Caseworker Travis, ESP Correctional Officer G. Luce, ESP Caseworker Healer, ESP Accounting Staff Isbah, ESP Correctional Officer Wagner, NNCC Associate Warden Lisa Walsh, NNCC

---

[1]The Court grants Plaintiff's motion to file an amended complaint. (Dkt. no. 26.)

Correctional Officer Webb, NNCC Correctional Officer Kraskey, NNCC Correctional Officer Wilson, OMD Staff Rex Reed, and John Does. (*Id.* at 2-8.) Plaintiff alleges six counts and seeks monetary damages, injunctive relief, and declaratory relief. (*Id.* at 25, 33.)

### A.   Count I

In Count I, Plaintiff alleges the following:  Cox, Baker, Byrnes, Watson, Travis, and Healer violated Plaintiff's right to access the courts because they have failed to respond to Plaintiff's grievances and to court orders demanding Plaintiff's access to his "media" discovery evidence, i.e. DVDs, VHS tapes, CD-ROMs, and cassettes. (Dkt. no. 26-1 at 10.) Plaintiff's inability to access his evidence prevented him from attacking his conviction on direct appeal as a *pro se* litigant because he could not support his grounds. (*Id.*) Plaintiff was prejudiced because he could not review his transcripts on the disc his appointed appeal counsel provided him. (*Id.*) ESP staff also confiscated three of Plaintiff's legal boxes which contained hard copies of Plaintiff's transcripts and his work product from his criminal trial and civil case no. 3:11-cv-66-HDM-WGC. (*Id.*) These actions together completely inhibited Plaintiff's ability to present, litigate, challenge/ attack his conviction on direct appeal, post-conviction writ of habeas corpus, and his civil case. (*Id.*)

Cox knew about Plaintiff's media files as early as June 2011. (*Id.* at 11.) Baker knew that Plaintiff had no access to review or prepare his discovery and failed to correct this error. (*Id.*)  Baker arbitrarily gave some inmates access to laptops for the purpose of reviewing their media evidence and had authorized those inmates to use the single holding cubes with the supervision of CERT officers. (*Id.*) However, since December 2012, Baker has denied Plaintiff access to his evidence. (*Id.*) Byrnes knew about Plaintiff's inability to access his evidence and failed to correct the violation. (*Id.*) Watson, Travis, and Healer all knew about Plaintiff's need to access his evidence. (*Id.* at 12.)

On February 6, 2014, Luce confiscated four of Plaintiff's legal boxes which contained transcripts and work product needed to litigate Plaintiff's direct appeal, post-

4

conviction petition, and civil rights appeal. (*Id.*) Plaintiff's legal boxes remain confiscated. (*Id.*) Wagner was present when Luce confiscated Plaintiff's materials. (*Id.*) Plaintiff alleges First, Sixth, and Fourteenth Amendment violations. (*Id.* at 9.)

The Court interprets this count as a claim for denial of access to the courts. Prisoners have a constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 346 (1996). This right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). This right, however, "guarantees no particular methodology but rather the conferral of a capability — the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis*, 518 U.S. at 356. It is this "capability, rather than the capability of turning pages in a law library, that is the touchstone" of the right of access to the courts. *Id.* at 356-57.

To establish a violation of the right of access to the courts, a prisoner must establish that he or she has suffered an actual injury, a jurisdictional requirement that flows from the standing doctrine and may not be waived. *Id.* at 349. An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id.* at 348. Delays in providing legal materials or assistance that result in actual injury are "not of constitutional significance" if "they are the product of prison regulations reasonably related to legitimate penological interests." *Id.* at 362. The right of access to the courts is limited to non-frivolous direct criminal appeals, habeas corpus proceedings, and § 1983 actions. *Id.* at 353 n.3, 354-55.

The Court finds that Plaintiff states a colorable denial of access to the courts claim. Based on the allegations, the court ordered Defendants to permit Plaintiff access to his media discovery evidence but Defendants failed to do so. As a result, Plaintiff was unable to look at the evidence and was completely denied the ability to present, litigate, and challenge/attack his conviction on direct appeal, his post-conviction petition, and his

civil rights case. Additionally, Defendants confiscated Plaintiff's legal materials which prevented him from litigating his direct appeal, post-conviction proceedings, and civil rights case. This claim shall proceed against Defendants Cox, Baker, Byrnes, Watson, Travis, Healer, Luce, and Wagner.

### B.   Count II

In Count II, Plaintiff alleges the following: Plaintiff filed a civil rights lawsuit against the Washoe County Sheriff's Department in case no. 3:11-cv-66-HDM-WGC. (Dkt. no. 26-1 at 15.) On May 17, 2011, Plaintiff arrived at NNCC to serve a two to six year sentence. (*Id.*) Since that time, Plaintiff has been held "illegally" in administrative segregation in closed custody his entire time with the NDOC. (*Id.*) Cox, Walsh, and Watson failed to respond to Plaintiff's grievances and have provided Plaintiff with inadequate access to the courts by failing to provide Plaintiff with direct physical access to a law library. (*Id.*) Walsh systematically denied all of Plaintiff's grievances. (*Id.*) Defendants locked Plaintiff up in closed custody for 23 hours per day and impeded Plaintiff's ability to litigate his civil rights case. (*Id.*) NNCC employs a paging system that requires Plaintiff to use exact citations in order to receive legal materials. (*Id.*) NNCC offers inadequate and limited assistance from untrained inmate law clerks who only stop at Plaintiff's cell to pick up legal request forms. (*Id.*) These inmate law clerks overrode Plaintiff's attempts to conduct his own litigation because they told Plaintiff that they knew what they were doing. (*Id.* at 16.) The paging system only permits inmates to check out ten items. (*Id.*) This system forced Plaintiff to choose between litigating his pending criminal case or litigating his civil rights case. (*Id.*) Plaintiff chose to litigate his criminal case and was unable to litigate his civil rights case as a result. (*Id.*)

At ESP, Baker, Byrnes, Watson, Travis, and Healer all denied Plaintiff direct physical access to a law library and did not provide assistance from persons trained in the law. (*Id.* at 17.) ESP employs a paging system that requires inmates to use exact citations to receive legal material. (*Id.*) However, ESP provides no assistance or means on how to locate the necessary citations. (*Id.*) Due to the lack of adequate legal

assistance, Plaintiff was unable to amend his original complaint in his civil case that resulted in some of his counts being dismissed. (*Id.*) Plaintiff was forced to file an incomplete Ninth Circuit Court of Appeal brief that resulted in that court appointing him pro bono counsel. (*Id.* at 18.) ESP did not provide Plaintiff the ability to review discovery evidence in his civil rights case despite a court order. (*Id.*) As a result, Plaintiff was unable to use this evidence in his trial preparations. (*Id.* at 19.)  Plaintiff alleges First, Sixth, and Fourteenth Amendment violations. (*Id.* at 14.)

The Court interprets these allegations as a claim for denial of access to the courts. The Court finds that Plaintiff states a colorable claim for denial of access to the courts. Based on the allegations, while at NNCC, Plaintiff had to use the paging system but was unable to acquire the items he needed because the inmate law clerks overrode his legal requests. Additionally, while at NNCC, the paging system forced Plaintiff to choose between litigating his criminal case and his civil rights case because of the limited number of resources Plaintiff was able to check out during the specified time period. Based on the allegations, while at ESP, Plaintiff had to use the paging system but was unable to adequately obtain resources because he did not know exact citations and ESP did not have any trained inmate clerks to aid him. This claim shall proceed against Defendants Cox, Walsh, Watson, Baker, Byrnes, Watson, Travis, and Healer.

**C.   Count III**

In Count III, Plaintiff alleges the following: Cox, Baker, Byrnes, Watson, Travis, and Healer all knew about Plaintiff's Sixth Amendment right to self-representation in both his criminal and civil cases. (Dkt. no. 26-1 at 21.) Plaintiff had been denied access to a laptop computer, DVD player, VHS tape player, and cassette player as a means to review his evidence during his direct appeal efforts. (*Id.*) Plaintiff could not present factual claims in his post-conviction petition because Defendants had denied him access to his transcripts. (*Id.*) Defendants had withheld Plaintiff's discs from him even though a judge had ordered ESP to send them to Plaintiff. (*Id.* at 22.) Defendants told ///

Plaintiff to hire private counsel if he wanted to review his media evidence. (*Id.*) Plaintiff alleges a Sixth Amendment violation. (*Id.* at 21.)

In *Faretta v. California*, 422 U.S. 806 (1975)*,* the Supreme Court held that a criminal defendant has the right under the Sixth Amendment to reject court-appointed counsel and conduct his own defense. *Id.* at  832. "An incarcerated defendant may not meaningfully exercise his right to represent himself without access to law books, witnesses, or other tools to prepare a defense." *Milton v. Morris*, 767 F.2d 1443, 1446 (9th Cir. 1985).

The Court finds that Plaintiff states a colorable claim for a violation of his Sixth Amendment right to self-representation as to his criminal case only. Based on the allegations, prison officials denied Plaintiff the ability to review the evidence in his criminal case. The Court dismisses Plaintiff's Sixth Amendment claim with respect to his civil cases with prejudice because "the Sixth Amendment identifies the basic rights that the accused shall enjoy in 'all criminal prosecutions.'" *Martinez v. Court of Appeal of California, Fourth Appellate Dist.*, 528 U.S. 152, 159-60 (2000). As such, the Sixth Amendment does not apply to civil cases. This claim shall proceed in part against Defendants Cox, Baker, Byrnes, Watson, Travis, and Healer.

### D.    Count IV

In Count IV, Plaintiff alleges the following: From January 1, 2013, through January 5, 2013, ESP staff made two unauthorized deductions from Plaintiff's inmate trust account which totaled $345.36. (Dkt. no. 26-1 at 23.) The prison staff told Plaintiff that his money was being taken in accordance to his prison wages earned. (*Id.*) However, while in NDOC custody, Plaintiff has been denied the opportunity to earn a prison wage. (*Id.*) The deducted money had been sent to Plaintiff from an outside source to fund Plaintiff's litigation efforts. (*Id.*) Isbah, Wiess, and Baker knew about these withdrawals. (*Id.*) Plaintiff never received any prior notice, pre-confiscation hearing, or an opportunity to address this incident. (*Id.*) Plaintiff alleges Fifth and Fourteenth Amendment due process violations. (*Id.*)

1    While an authorized, intentional deprivation of property is actionable under the
2    Due Process Clause, neither a negligent nor intentional unauthorized deprivation of
3    property by a prison official is actionable if a meaningful post-deprivation remedy is
4    available for the loss. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Quick v. Jones*, 754
5    F.2d 1521, 1524 (9th Cir. 1985). An authorized deprivation is one carried out pursuant
6    to established state procedures, regulations, or statutes. *Logan v. Zimmerman Brush
7    Co.*, 455 U.S. 422, 436 (1982); *Piatt v. MacDougall*, 773 F.2d 1032, 1036 (9th Cir.
8    1985); *see also Knudson v. City of Ellensburg*, 832 F.2d 1142, 1149 (9th Cir. 1987).

9    The Court finds that Plaintiff states a colorable due process claim. Although
10   Plaintiff states that deductions were "unauthorized," the amended complaint is clear that
11   Plaintiff means that he did not authorize the deductions. However, based on the
12   allegations, it appears that prison accounting officials did "authorize" the taking under
13   their regulations in error. As such, this claim shall proceed against Defendants Isbah,
14   Wiess, and Baker.

15       **E.    Count V**

16   In Count V, Plaintiff alleges the following: On December 3, 2013, John Doe #1
17   violated Plaintiff's Fourth Amendment right when he packed Plaintiff's property without
18   Plaintiff present. (Dkt. no. 26-1 at 24.) John Doe #1 lost, destroyed, or did not pack the
19   photos of Plaintiff's deceased father and grandmother. (*Id.*) Plaintiff kept their pictures in
20   an envelope with his name and number on the front of the envelope. (*Id.*) Plaintiff
21   believes that John Doe's actions were intentional. (*Id.*) When Plaintiff received his
22   property on December 10, 2013, several of Plaintiff's boxes had been completely
23   destroyed. (*Id.*)

24   The Court interprets this claim as a due process claim. The Court finds that
25   Plaintiff states a colorable due process claim to the extent that Plaintiff is alleging that
26   ///
27   ///
28   ///

John Doe conducted an authorized, intentional deprivation of property. This claim shall proceed against Defendant John Doe.[2]

### F.    Count VI

In Count VI, Plaintiff alleges the following: On August 3, 2010, Plaintiff was housed at the Washoe County Detention Facility to face criminal charges. (Dkt. no. 26-1 at 25.) On December 7, 2010, a court granted Plaintiff the Sixth Amendment right to self-representation. (*Id.*) On May 17, 2011, Plaintiff was transferred to NNCC to serve a two to six year sentence for an unrelated charge and was placed in closed custody during his entire stay at NNCC. (*Id.*) Prison officials denied Plaintiff the means to review and prepare his discovery for use in his efforts for self-representation. (*Id.*) Prison officials confiscated his cassette players needed to review discovery evidence and his cassette tapes. (*Id.* at 26.) Webb, Kraskey, and Wilson had confiscated his cassette player and cassette tapes with evidence on them. (*Id.*) John Does had confiscated Plaintiff's CDs of discovery evidence. (*Id.* at 27.) Walsh and Watson systematically denied all of Plaintiff's grievances on this issue. (*Id.*) Cox, Palmer, Walsh, Watson, Kraskey, Wilson, Rex Reed, and John Does all knew about these violations. (*Id.* at 28-29.)

The Court interprets this claim as a denial of Plaintiff's Sixth Amendment right to self-representation in his criminal case. Based on the allegations, Defendants confiscated all evidence and means for Plaintiff to review evidence in his case. As such, this claim shall proceed against Defendants Cox, Palmer, Walsh, Watson, Webb, Kraskey, Wilson, Rex Reed, and John Does.

///

---

[2]As a general rule, the use of "Doe" pleading to identify a defendant is not favored. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). However, the Court recognizes that there are situations "where the identity of alleged defendants will not be known prior to the filing of a complaint." *Id.* "In such circumstances, the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Id.*

### III.    MOTION FOR RECONSIDERATION

On October 20, 2014, this Court denied Plaintiff's motion for injunctive relief because Plaintiff could not show irreparable harm. (Dkt. no. 21 at 2.) The Court found that Plaintiff was alleging that he needed to be transferred to NNCC in order to provide evidence for that motion and for his motion for summary judgment. (*Id.*) The Court noted that the case was in a 90-day stay and that Plaintiff had no reason to provide evidence to the Court at that time. (*Id.*) Additionally, the Court found that if Plaintiff was alleging that he could not file a motion for summary judgment in another case, Plaintiff should file a motion for relief in that other case. (*Id.* at 2 n.1.)

Plaintiff now files a motion for reconsideration and states that he wishes to file a motion for summary judgment in this current case and that he would suffer irreparable harm if he were not transferred to NNCC due to the denial of access to the courts. (Dkt. no. 27 at 1.)

A motion to reconsider must set forth "some valid reason why the court should reconsider its prior decision" and set "forth facts or law of a strongly convincing nature to persuade the court to reverse its prior decision." *Frasure v. United States*, 256 F.Supp.2d 1180, 1183 (D. Nev. 2003). Reconsideration is appropriate if this Court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J v. Acands, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). "A motion for reconsideration is not an avenue to re-litigate the same issues and arguments upon which the court already has ruled." *Brown v. Kinross Gold, U.S.A.*, 378 F.Supp.2d 1280, 1288 (D. Nev. 2005).

The Court denies Plaintiff's motion for reconsideration. Plaintiff has not demonstrated that the initial decision was manifestly unjust at the time the Court signed it in light of the 90-day stay.

///

///

**IV.    CONCLUSION**

For the foregoing reasons, it is ordered that the motion to amend complaint (dkt. no. 26) is granted.

It is further ordered that the Clerk of the Court shall file the amended complaint (dkt. no. 26-1).

It is further ordered that Count I, alleging denial of access to the courts, shall proceed against Defendants Cox, Baker, Byrnes, Watson, Travis, Healer, Luce, and Wagner.

It is further ordered that Count II, alleging denial of access to the courts, shall proceed against Defendants Cox, Walsh, Watson, Baker, Byrnes, Watson, Travis, and Healer.

It is further ordered that Count III, alleging denial of the right to self-representation, shall proceed against Defendants Cox, Baker, Byrnes, Watson, Travis, and Healer with respect to Plaintiff's criminal case only.

It is further ordered that Count IV, alleging due process, shall proceed against Defendants Isbah, Wiess, and Baker.

It is further ordered that Count V, alleging due process, shall proceed against Defendant John Doe.

It is further ordered that Count VI, alleging denial of the right to self-representation, shall proceed against Defendants Cox, Palmer, Walsh, Watson, Webb, Kraskey, Wilson, Rex Reed, and John Does.

It is further ordered that the motion for reconsideration (dkt. no. 27) is denied.

It is further ordered that the Clerk of the Court shall electronically serve a copy of this order and a copy of Plaintiff's amended complaint (dkt. no. 26-1) on the Office of the Attorney General of the State of Nevada, attention Kat Howe.

It is further ordered that subject to the findings of this screening order, within twenty-one (21) days of the date of entry of this order, the Attorney General's Office shall file a notice advising the Court and Plaintiff of: (a) the names of the defendants for

whom it accepts service; (b) the names of the defendants for whom it does not accept service, and (c) the names of the defendants for whom it is filing last-known-address information under seal. As to any of the named defendants for which the Attorney General's Office cannot accept service, the Office shall file, *under seal*, the last known address(es) of those defendant(s) for whom it has such information.

It is further ordered that if service cannot be accepted for any of the named defendant(s), Plaintiff shall file a motion identifying the unserved defendant(s), requesting issuance of a summons, and specifying a full name and address for the defendant(s). For the defendant(s) as to which the Attorney General has not provided last-known-address information, Plaintiff shall provide the full name and address for the defendant(s).

It is further ordered that if the Attorney General accepts service of process for any named defendant(s), such defendant(s) shall file and serve an answer or other response to the amended complaint within sixty (60) days from the date of this order.

It is further ordered that, henceforth, Plaintiff shall serve upon defendant(s) or, if an appearance has been entered by counsel, upon their attorney(s), a copy of every pleading, motion or other document submitted for consideration by the Court. Plaintiff shall include with the original paper submitted for filing a certificate stating the date that a true and correct copy of the document was mailed to the defendants or counsel for the defendants. If counsel has entered a notice of appearance, Plaintiff shall direct service to the individual attorney named in the notice of appearance, at the address stated therein. The Court may disregard any paper received by a district judge or magistrate judge which has not been filed with the Clerk of the Court, and any paper received by a district judge, magistrate judge, or the Clerk of the Court which fails to include a certificate showing proper service.

DATED THIS 3rd day of December 2014.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE