UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MAX REED, II,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br><br>NEVADA DEPARTMENT OF<br>CORRECTIONS, *et al.*,<br>　　　　　　　Defendants. | 3:14-cv-00313-MMD-VPC<br><br><br><u>REPORT AND RECOMMENDATION</u><br><u>OF U.S. MAGISTRATE JUDGE</u> |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court are defendants' partial motions to dismiss and/or for summary judgment (#s 45/46).[1] Plaintiff opposed (#55), and defendants replied (#59). For the reasons stated below, the court recommends that the motions be denied.

**I.　FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Max Reed II ("plaintiff") is an inmate in the custody of the Nevada Department of Corrections ("NDOC"). Presently, plaintiff is incarcerated at Ely State Prison ("ESP") in Ely, Nevada. Pursuant to 42 U.S.C. § 1983, plaintiff brings several civil rights claims against NDOC and ESP officials, pertinently including NDOC Director James G. Cox ("Cox"), and ESP Associate Wardens Harold Byrne ("Byrne") and Adam Watson ("Watson").

On August 12, 2014, the District Court screened the complaint (#10) pursuant to 28 U.S.C. § 1915. In its screening order (#9), the Court dismissed several counts and permitted

---

[1] Defendants filed an errata (#49) on February 4, 2015, which contained a brief that corrected several errors contained in the original paper (#s 45/46). Where indicated, the court cites to defendants' corrected brief (#49-5). Defendants should note for future cases that the proper procedure is withdrawal of the motion and resubmission, if applicable deadlines permit.

others to move forward.² On December 3, 2014, the District Court granted plaintiff's motion to amend and screened the amended complaint (#30). In the second screening order, the Court allowed the following claims, among others, to move forward:

(1) Count I's First Amendment claim against Cox, Byrne, Watson, and others for their alleged roles in denying plaintiff access to the courts by impeding his access to certain discovery evidence, thereby preventing him from attacking his criminal conviction upon appeal, and also confiscating three boxes of legal paperwork. (*Id.* at 4-6.)

(2) Count II's First Amendment claim against Cox, Byrne, Watson, and others for their alleged roles in denying plaintiff access to the courts by maintaining him in close custody and thereby preventing his adequate access to the ESP law library, and by allegedly utilizing an exact-cite paging system for legal materials and thereby forcing plaintiff to choose between litigating his criminal appeal and a civil rights case against the Washoe County Sherriff's Department. (*Id.* at 6-7.)

(3) Count III's Sixth Amendment claim against Cox, Byrne, Watson, and others for allegedly violating plaintiff's right to self-representation by denying him access to technology devices that facilitate review of media evidence while he litigated his post-conviction criminal appeal. (*Id.* at 7-8.)

Prior to answering, defendants moved for dismissal and/or summary judgment. Plaintiff opposed (#55), and defendants replied (#60). The court has not yet entered a scheduling order, and discovery has not yet occurred.

## II.   LEGAL STANDARD

Summary judgment allows the court to avoid unneeded trials. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly grants summary judgment when the record discovered by the parties demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under

---

² The court notes that plaintiff named as a defendant Nancy Flores ("Flores") of the NDOC Offenders Management Division in his first complaint (#9). However, he did not name Flores in the amended complaint (#26). Thus, upon the District Court's entry of its second screening order (#30), Flores no longer remained in this case. Accordingly, it is unnecessary to reach the argument that Flores should be dismissed, which defendants improperly raised for the first time in reply. *See Avery v. Barsky*, No. 3:12-cv-00652-MMD-WGC, 2013 WL 1663612, at *3 n.2 (D. Nev. Apr. 17, 2013).

the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986). A dispute is "genuine" only where a sufficient evidentiary basis would allow a reasonable jury to find for the nonmoving party. *Id.* "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996).

Summary judgment proceeds in burden-shifting steps. When the moving party bears the burden of proof at trial, it must support its motion "with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal quotation omitted). In contrast, a moving party who does not bear the burden of proof "need only prove that there is an absence of evidence to support the non-moving party's case[,]" *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010), and such a party may additionally produce evidence that negates an essential element of the nonmoving party's claim or defense, *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden under Rule 56, the nonmoving party must "designate specific facts demonstrating the existence of genuine issues for trial. This burden is not a light one." *In re Oracle Corp.*, 627 F.3d at 387 (internal citation omitted). "The non-moving party must show more than the mere existence of a scintilla of evidence. . . . In fact, the

3

non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (internal citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute that requires a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence, *see* Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported summary judgment motion, *Orr*, 285 F.3d at 783.

### III. DISCUSSION

Defendants raise three arguments for dismissal and/or summary judgment. First, they argue that the statute of limitations has run on some of plaintiff's claims. Second, they argue that claims against Cox, Byrne, and Watson should be dismissed because supervisory liability is not cognizable under § 1983. Finally, they argue that plaintiff's First Amendment claim regarding the adequacy of the ESP law library fails because the evidence indisputably shows that ESP does not have a exact-cite paging system, and plaintiff's belief that the Constitution requires that he have assistance of prison staff trained in law is mistaken.

**A.   Civil Rights Claims Pursuant to 42 U.S.C. § 1983**

42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000)). The statute "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights[,]" *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and is "merely . . . the procedural device for enforcing substantive provisions of the Constitution and federal statutes," *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Claims under § 1983 require the plaintiff to allege (1) the violation of a federally-protected right by (2) a person or official who acts under the color of state law. *Warner*, 451 F.3d at 1067. To prevail, the plaintiff must allege and prove sufficient facts under each element of the underlying constitutional or statutory right.

4

In this case, defendants are each state prison officials acting within their respective capacities under state law. Plaintiff alleges violations of his constitutional rights. Therefore, he has satisfied § 1983's threshold requirements and the court proceeds to analysis of his claims

**B.   Statute of Limitations**

Defendants first argue that some of plaintiff's claims are barred by the statute of limitations. (#49-5 at 7-8.) The argument pertains to counts I, II, and III. Plaintiff filed his complaint on June 13, 2014, and therefore, the period of limitations stretches back to June 13, 2012 by their calculation. Additionally, because plaintiff grieved an access to the courts claim between February 13, 2013 and July 10, 2013, they also concede that he is entitled to 147 days of tolling, thereby placing the applicable limitations date at January 18, 2012. (*Id.* at 7.) Accordingly, they argue that "any claims in the . . . Amended Complaint that survive cannot be based on . . ." any events that occurred before January 18, 2012. (*Id.* at 8.) Plaintiff opposes on several bases. First, he observes that discovery has not yet opened, and discovery will allow him to "show exactly how and when . . ." defendants violated his First Amendment rights. (#55 at 2.) Second, he argues that defendants' alleged violations of his rights are "continuing violations" that continued through the limitations period, and apparently began long before. (*Id.* at 14.) Finally, he states that defendants "systematically denied all or most of [his] grievances." (*Id.*)[3] Defendants counter that the grievances were denied for procedural deficiencies,[4] and because tolling requires completion of the full grievance process, plaintiff is ineligible for additional tolling.

---

[3] It is unclear to the court whether plaintiff intended to make the continuing-violations and systematic-denial arguments only with respect to count II, or with respect to counts I, II, and III. Consistent with the court's obligation to construe his *pro se* papers liberally, the court will read his opposition as taking the latter approach. *See Hebbe v. Pliler*, 627 F.3d 338, 341-42 (9th Cir. 2010); *Thomas v. Porter*, 11 F.3d 1144, 1150 (9th Cir. 2010).

[4] Defendants suggest that plaintiff indicated that the grievances were denied on procedural grounds. (*See* #60 at 8.) The court finds no basis for this characterization. To the contrary, plaintiff states only that the grievances were "systematically" denied, without stating a basis for such denials. Accordingly, the court construes defendants' reply as making the argument independently, rather than evaluating the point as one that is undisputed.

1. **Standard**

Federal law provides no separate statute of limitations for § 1983 claims, and federal courts accordingly look to the period of limitations for personal injury torts as provided by state law. *Owens v. Okure*, 488 U.S. 235, 249-50 (1989). In Nevada, the statute of limitations for § 1983 claims is two years. *Irish-Miller v. Las Vegas Metro. Police Dep't*, No. 2:14-cv-1654-JCM-NJK, 2015 WL 1530608, at *3 (D. Nev. Apr. 6, 2015); Nev. Rev. Statutes 11.190(4). However, because the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires inmates in Nevada to exhaust their claims through the NDOC's grievance process prior to filing lawsuits in federal court, the period of limitations is tolled during the pendency of the grievance process. *See Wisenbaker v. Farwell*, 341 F. Supp. 2d 1160, 1165 (D. Nev. 2004). As such, events underlying a § 1983 action must fall within two years of the filing date, in addition to the number of days between the filing of a prison grievance and prison officials' final response to that grievance.

2. **Analysis**

The court recommends that summary judgment be denied without prejudice on this issue. Based upon plaintiff's representations, a material issue of fact remains as to the number of days for tolling. Defendants bear the burden of establishing a failure to exhaust. *See Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). They have no submitted evidence by which the court can conclude that plaintiff's grievances were correctly denied for procedural reasons, and the court cannot accept their position as true without sufficient evidentiary support. Moreover, Courts in this district have held that a plaintiff exhausted the grievance process even when the process was incomplete in the NDOC's view. *See, e.g.*, *Meeks v. Burson*, No. 3:12-cv-00322-MMD-WGC, 2014 WL 4666743, at *10 (D. Nev. Sept. 17, 2014); *see also Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010); *Sapp v. Kimbrell*, 623 F.3d 813, 823-824 (9th Cir. 2010). If that were the case here, it is possible that plaintiff may be eligible for additional days of tolling. Consequently, as the court believes that discovery would shed light on this issue, summary judgment should be denied without prejudice. The court further recommends that defendants be provided an opportunity to raise a limitations arguments later in this case, if warranted.

### C. Supervisory Liability

Defendants next argue that the complaint fails to state claims against Cox, Byrne, and Watson because § 1983 does not encompass supervisory liability, and these defendants should be dismissed from the case on that basis. (#49-5 at 9-10.) Plaintiff counters, once again, that he has not been able to propound discovery requests, and he expects that discovery will allow him to "show exactly how and when [defendants] violated his access to the courts rights." (#55 at 2.) In reply, defendants acknowledge that an issue of fact remains as to the involvement of the supervisory defendants. (#60 at 11.)

#### 1. Standard

To be liable under § for a violation of an inmate's constitutional rights, each defendant must be personally involved in the underlying violation. There is no *respondeat superior* liability under § 1983. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). As the Ninth Circuit clarified in *Starr v. Baca*, a supervisor is liable only when he is personally involved in the abridgement of an inmate's rights, or when there is a sufficient causal connection between his conduct and the constitutional violations. 652 F.3d 1202, 1207 (9th Cir. 2011). Although knowledge is sufficient in some circumstances, *see, e.g., id.* at 1208 (discussing deliberate indifference actions), it may not be sufficient in others, *see, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 676-77 (2009) (explaining that discrimination actions require proof of discriminatory purpose of each defendant, and, therefore, "mere knowledge" is not enough).

#### 2. Analysis

The court recommends that dismissal of the supervisory claims be denied. As defendants recognize, plaintiff may be able to discover evidence that demonstrates personal involvement by these defendants, and their concession of this point persuades the court that retaining these defendants is the prudent decision at this time. Nevertheless, plaintiff is advised that mere knowledge on the part of these defendants is not ordinarily enough to state a claim for denial of access under § 1983. Aside from certain types of claims, defendants must be personally involved in the alleged constitutional violations. As such, plaintiff will likely need to amend his complaint at a later date: presently, the complaint merely alleges that Cox, Byrnes, and Watson were "made

aware" of the alleged denial of access to the courts without stating how they were personally involved. (*See* #31 at 11-12.) Because the court believes that discovery may provide insight into these issues, it recommends that dismissal be denied. Defendants should be given leave to raise the issue again at a later time in this litigation if and when merited.

### D. Adequacy of the ESP Law Library

Lastly, defendants argue that summary judgment is appropriate on plaintiff's First Amendment claim relating to the adequacy of the ESP law library. They argue that the claim fails because undisputed evidence demonstrates that plaintiff does not need to provide an exact citation to receive legal materials, and that the NDOC need not make available assistance of persons trained in the law because ESP inmates have access to legal materials through the institutional library. (#49-5 at 10.) Moreover, they rely on a Nevada Supreme Court decision, *Miller v. Evans*, 108 Nev. 372 (1992), for the proposition that the constitutional adequacy of the ESP law library has already been determined—and, therefore, that plaintiff's claims must fail as a matter of law.

### 1. Standard

Prisoners have a constitutionally guaranteed right to access the courts. *See Lewis v. Casey*, 518 U.S. 343, 346 (1996). As the Ninth Circuit has explained, the Supreme Court roots the right at times in the Due Process and Equal Protection Clauses of the Fifth and Fourteenth Amendments, and at others in the First Amendment's Petition Clause. *Blaisdell v. Frappiea*, 729 F.3d 1237, 1243 (9th Cir. 2013). In either case, the right to access the courts protects inmates in several ways. First, it forbids prison officials from interfering with an inmate's efforts to litigate a case by seizing legal materials or otherwise interfering with an inmate's ability to actively litigate a filed case. *See Silva v. Di Vittorio*, 658 F.3d 1090, 1102-03 (9th Cir. 2011) (discussing the "interference line of cases," under which prison officials may not erect barriers "that impede the right of access"). The extent of the inmate's rights may be limited by legitimate penological considerations, as described in *Turner v. Safley*, 482 U.S. 78, 89-90 (1987). *See Shaw v. Murphy*, 532 U.S. 223, 239 (2001) (explaining that First Amendment rights may be limited by legitimate

penological objectives); *Bradley v. Hall*, 64 F.3d 1276, 1279-81 (9th Cir. 1995) (applying the *Turner* test to a prison regulation that interfered with an inmate's right to access the courts).

Second, the right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). The Constitution "guarantees no particular methodology but rather the conferral of a capability—the capability of bringing challenges to sentences or conditions of confinement . . . ." *Lewis*, 518 U.S. at 356. Accordingly, the legal resources that a prison provides are merely "the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Id.* (quoting *Bounds*, 430 U.S. at 825). A constitutional violation arises only where the means are inadequate. Because "meaningful access to the courts is the touchstone, . . . the inmate therefore must . . . demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.* at 351. A colorable claim exists only where the plaintiff alleges "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Nev. Dep't of Corrs. v. Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011) (quoting *Lewis*, 518 U.S. at 349). Ultimately, the inmate must show that defendants have "frustrated a claim." *Id.*

Courts in this District and also the Ninth Circuit have criticized various forms of "exact-cite paging systems." *E.g. Toussaint v. McCarthy*, 801 F.2d 1080, 1109-10 (9th Cir. 1986), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995); *Koerschner v. Warden*, 508 F. Supp. 2d 849, 857-61 (D. Nev. 2007) (considering exact-cite systems at Ely State Prison and Lovelock Correctional Center). However, these systems are not unconstitutional *per se*. See *Aparicio v. McDaniel*, No. 3:07-cv-00427-LRH-VPC, 2012 WL 1079055, at *13 n.41 (D. Nev. Mar. 30, 2012) (explaining that *Koerschner* did not "establish that all paging systems in place at all times in Nevada state prisons are constitutionally inadequate"); *Thurmond v. Smith*, No. 3:09-cv-00401-RJC-WGC, 2012 WL 4442620, at *2 (D. Nev. Sept. 21, 2012) (same); *see also Felix v. McDaniel*, No. 3:09-cv-00483-LRH-WGC, 2012 WL 666742, at *5-8 (D. Nev. Feb. 29, 2012) (explaining that *Koerschner* found inadequacy of Lovelock's then-existing paging system

because, in substance, it failed to provide inmates an effective ability to pursue their claim through either a law library or legal assistance). Instead, the constitutionality of a prison's law library and its related procedures is a fact-specific inquiry that turns on the above considerations: whether the system adequately facilitates an inmate's meaningful access to the courts, and whether the system, if inadequate, has hindered an inmate's claims.

2. **Analysis**

The court recommends that summary judgment be denied. Defendants are correct that, under *Bounds*, prison officials must provide meaningful access to materials or assistance by persons trained in the law, but not both. Thus, to the extent plaintiff claims independently that this must be provided, the claim will fail. However, defendants have not established that plaintiff's claim relating to the adequacy of the library itself fails; therefore, it is possible that failing to provide plaintiff assistance with legally-trained persons violates his First Amendment rights. Until defendants establish the adequacy of the library as an undisputed fact, each of the theories must survive.

The court is unpersuaded by defendants' arguments relating to the library's adequacy. First, defendants' reliance on *Miller v. Evans* is unavailing. Although the determinations of the Nevada Supreme Court receive this court's attention and respect, only decisions by the Ninth Circuit and United States Supreme Court are binding upon this court's analysis of federal law. The court also observes that the *Miller* decision is two decades old, and defendants surely cannot be representing that the library system in place today is exactly identical to the one which existed in the last millennium. Moreover, First Amendment claims of this variety are fact-intensive inquiries that turn on the particular circumstances in a plaintiff's case. Therefore, the court is unable to rely on *Miller* as dispositive.

Second, disputed issues of fact remain as to whether plaintiff has meaningful access to legal resources at ESP. In support of their position that an exact-cite paging system is not in place at ESP, defendants submit copies of the "Law Library Supply and Book Request Form," which they argue characterize as requiring either a case name and citation or a description of an issue, but not both. (#49-5 at 11; #46-4.) The form does not support this characterization. Its language

requests a citation or "what type of new litigation," which is not a clear request for an "issue." As such, it is not an undisputed fact that the form does not require a citation.

Further, even if the form were clear about what an inmate may provide to obtain responsive legal research, it would not overcome plaintiff's opposition. He submits a copy of his request for the case *People v. Nero*, which he described as "out of California, 9th Circuit, and was published between 2000 and 2010. Topic 'aiding & abetting.'" (#55 at 60.) To that request, law library staff responded: "Need actual citation/not enough info." (*Id.*) This response undermines defendants' position that "[n]one of [plaintiff's requests] was ever denied because he did not know the exact citation." (#49-5 at 11.) Indeed, despite his provision of a case name and several citation details, as well as a description of the case issue, his response went unfulfilled. Defendants' response on this point, that plaintiff's request was actually for a "shepardized" case (*see* #60 at 3) is unpersuasive. The context of the request suggests that plaintiff sought the case itself, and in returning the request for lack of details, it appears that the inmate law clerk also understood that plaintiff wanted the case, rather than the procedural history.

Additionally, the court takes judicial notice of a case by the name of *People v. Nero*, a 2010 decision by the California Court of Appeal that discusses the precise topic that plaintiff described in his request. *See* 181 Cal. App. 4th 504 (2010). This court located the case in less than one minute in a Westlaw search. That the court was able to quickly locate the case does not, of course, settle the factual issues or establish First Amendment liability. It does, however, bolster the court's conclusion that a factual issue remains on the adequacy of defendants' efforts to facilitate plaintiff's access to the courts. This is particularly so in light of defendants' representation that some cases may fall "outside of the institutions' payment plan[,]" which the court construes as an indication that ESP's law library utilizes Westlaw or LexisNexis to some extent to fulfill the legal research requests of the inmates. For these reasons, defendants have not carried their burden of establishing that no factual issues remain on this issue.

### IV.   CONCLUSION

The court has considered the motions and the parties' papers, and recommends that defendants' motions be denied. Defendants, in reply, raise new arguments relating to summary

judgment on the claims pertaining to plaintiff's access and review of legal materials, but the court will not consider these improperly raised arguments. *See Avery*, 2013 WL 1663612, at *3 n.2. Finally, the court declines defendants' invitation to recommend that this case proceed with a "bifurcation of the current briefing" (*see* #60 at 11) with a supplemental opposition by plaintiff and a new reply by defendants. Such a process is not consistent with the briefing procedures described in this District's Local Rules, and so proceeding promises only a disorderly docket. If permitted by subsequent orders of this court or the District Court, the parties may file entirely new dispositive motions. Such motions should contain points and authorities in support of the requested dispositions and should not cursorily incorporate or reference previous exhibits or briefings.

The parties are advised:

1.  Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.  This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motions for dismissal and/or summary judgment (#s 45/46) be **DENIED**.

DATED: May 18, 2015.

_____
UNITED STATES MAGISTRATE JUDGE