1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

MAX REED II,                                          3:14-cv-00313-MMD-CBC

                       Plaintiff,

   v.                                                **REPORT AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE**

NEVADA DEPT. OF CORRECTIONS, *et
al.,*

                     Defendants.

      This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

      This case involves a civil rights action filed by Plaintiff Max Reed II ("Reed") against Defendants Renee Baker, Harold Byrne, James Cox, Leslie Healer, Agnes Horn, Felix Kreskey, Grant Luce, Jack Palmer, Rex Reed, Melissa Travis, Lisa Walsh, Adam Watson, Kenneth Webb, and Jonathan Wilson (collectively referred to as "Defendants"). Currently pending before the Court is a motion for summary judgment filed by Defendants. (ECF Nos. 183, 185.) The motion for summary judgment raises multiple arguments focusing on Reed's failure to exhaust, the assertion that Reed's claims are barred by the statute of limitations, and that Reed has suffered no actual injury. (ECF No. 183.) In response, Reed argues that his failure to exhaust is excusable, multiple material facts are in dispute, and he did suffer actual injury. (ECF No. 191 at 1-26.) Defendants replied. (ECF No. 199). Having thoroughly reviewed the record and papers, the Court hereby recommends that Defendants' motion for summary judgment be granted.

///

///

///

1    **I.    BACKGROUND AND PROCEDURAL HISTORY**

2        A.    Procedural History

3        Reed is an inmate in the custody of the Nevada Department of Corrections

4    ("NDOC"), and is currently housed at High Desert State Prison ("HDSP") in Indian

5    Springs, Nevada.  (ECF No. 10.)  However, the events giving rise to this case took place

6    at Ely State Prison ("ESP") and the Northern Nevada Correctional Center ("NNCC").  (*Id.*)

7    On June 13, 2014, Reed submitted a civil rights complaint pursuant to 42 U.S.C. §1983

8    together with an application to proceed in forma pauperis, a motion to file excess pages,

9    a motion to certify a class, and a motion for appointment of counsel.  (*Id.*)  In the

10   complaint, Reed asserted fifteen claims for relief against Defendants.  (*Id.* at 12-45.)

11   Reed sought monetary relief.  (*Id.* at 48.)

12       Pursuant to 28 U.S.C. § 1915A(a), the Court screened Reed's complaint on

13   August 12, 2014, which determined several claims could proceed.  (ECF No. 9.)  On

14   December 3, 2014, Reed was granted leave to file his amended complaint, which was

15   also screened. (ECF No. 30). In the screening order, the court allowed Reed to proceed

16   on the following claims: (1) Count I, a claim for a denial of access to the courts based on

17   the a First, Sixth and Fourteenth Amendments; (2) Count II, a denial of access claims

18   based on First, Sixth and Fourteenth Amendments; (3) Count III to the extent this claim

19   asserted a violation of Reed's Sixth Amendment right to self-representation in his criminal

20   case only; (4) Count IV, a claim based on the alleged unauthorized taking of money from

21   Reed's prison accounts in violation of his Due Process rights pursuant to the Fifth and

22   Fourteenth Amendments;  (4) Count V, a claim for improperly destroying and/or taking

23   Reed's property in violation of the Fourth Amendment; and, (5) Count VI, a claim for

24   denial of access to the courts in violation of his Sixth Amendment rights. (ECF No. 31 at

25   9-30.)

26       Between 2014 to the present, the parties have engaged in extensive and

27   protracted litigation. This has included the filing of various motions by both Reed and

28   Defendants on a variety of topics – including various motions for preliminary injunctions

1   and temporary restraining orders, discovery motions, motions for reconsideration and the
2   like. In addition, the parties have conducted discovery.

3       Defendants have now filed a second motion for summary judgment, which seeks
4   dismissal of all claims in this case. The factual basis of each of these claims is as follows:

5           B.    Factual Background Related to Count I

6       In Count I, Reed asserts that Cox, Baker, Brynes, Watson, Travis, and Healer
7   violated his right to have access to the courts.  (ECF No. 31 at 9-13.)  Specifically, he
8   asserts that they "together and collectively failed to act, correct, [or] respond to [his]
9   efforts . . . to access [his] 'media' discovery evidence . . .result[ing] in [him] being totally
10  unable to attack [his conviction] . . ."  (*Id.* at 10.)  He asserts that each of the named
11  defendants was made aware of Reed's need to access his evidence, and his inability to
12  do so, and that none of the named defendants took any action to correct this.  (*Id.* At 10-
13  13.) Reed alleges First, Sixth, and Fourteenth Amendment violations. (*Id.* at 9).

14          C.    Factual Background Related to Count II

15      In Count II, Reed asserts that Cox, Byrne, Walsh, Watson and others violated his
16  right to have access to the courts.  (ECF No. 31 at 15-20.)  He asserts that he was denied
17  direct physical access to the law library; his grievances were all systematically denied; he
18  was "'illegally' or falsely" classified as close custody while at NNCC; NNCC and NDOC
19  employ an exact-cite paging system with a ten (10) item checkout limit; and inadequate
20  legal assistance from untrained inmate law clerks.  (*Id.* at 15-17.)  He further asserts that
21  this resulted in him having to choose which of his cases to litigate and left him unable to
22  properly prepare for legal matters.  (*Id.* at 17-20.)  Reed alleges First, Sixth, and
23  Fourteenth Amendment violations. (*Id.* at 9).

24          D.    Factual Background Related to Count III

25      In Count III, Plaintiff alleges Cox, Byrne, Watson and others allegedly violated
26  Reeds right to self-representation pursuant to the Sixth Amendment in his criminal case.
27  Reed asserts these Defendants knew about Plaintiff's Sixth Amendment right to self-
28  representation in both his criminal case. (Dkt. no. 26-1 at 21.) However, they denied him

access to a laptop computer, DVD player, VHS tape player, and cassette player as a means to review his evidence during his direct appeal efforts. (Id.) Plaintiff could not present factual claims in his post-conviction petition because Defendants had denied him access to his transcripts. (Id.) Defendants had withheld Plaintiff's discs from him even though a judge had ordered ESP to send them to Plaintiff. (Id. at 22.)

E.    Factual Background Related to Count IV

In Count IV, Reed asserts that his due process rights were violated when Defendants took two unauthorized deductions from his inmate trust account.  (ECF No. 31 at 23.)  Reed claims that on or about January 1st – 5th, 2013, ESP staff took these deductions, stating that the deductions were being taken in accordance with AR 258 and were taken from Reed's prison wages.  (*Id.*)  Reed asserts this was improper because he has not earned a wage since being in NDOC custody.  (*Id.*)

F.    Factual Background Related to Count V

In Count V, Reed asserts that he is entitled to compensation because John Doe 1 lost, destroyed, or did not pack Reed's photos of his deceased father and grandmother. (ECF No. 31 at 24.) As such, he claims that Defendant John Doe 1 intentionally deprived him of property in violation of the Fourth Amendment.

G.    Factual Background Related to Count VI

In Count VI, Reed asserts that he was denied access to the courts by Defendants regarding Case No. CR10-1575.  (ECF No. 31 at 25-30.)  Specifically, Reed asserts that he was denied the means to review and prepare his discovery files for use in court; he was denied physical access to a law library; he was forced to use an inadequate exact-cite paging system; his cassette player was taken; and, he was routinely denied access to legal calls.  (*Id.*)  Reed asserts that these violations resulted in his inability to represent himself in case No. CR10-1575.  (*Id.*)

H.    Defendants' Motion for Summary Judgment

On June 1, 2018, Defendants filed a motion for summary judgment seeking dismissal of all the claims in this case.  (ECF No. 183.)  Defendants make a variety of

arguments in support of summary judgment. As to the access to courts claims (Counts I, II, III and VI), Defendants broadly argue these claims are barred by one, or all, of these theories: (1) the statute of limitations, (*Id.*, pp. 6-12); (2) Reed's failure to exhaust his administrative remedies, (*Id.*); and, (3) there is no evidence that Reed was actually denied access to the courts or suffered any actual injury. (*Id.*, pp. 12-16). Defendant also argues that even if there are issues of fact on these claims, Defendants are entitled to qualified immunity. (*Id.*, 18-19).

As to Count IV, Defendants assert summary judgment should be granted because the deductions from him prison account were proper and authorized and did not constitute a violation of due process. (*Id.*, pp. 16-17). As to Count V, Defendants argue this claim must be dismissed because Reed failed to identify a proper Defendant following the extensive discovery. (*Id.*, p. 18).

Defendants also broadly argue that to the extent to court disagrees with any of the above arguments, the claims against Cox, Watson, and Bryne must be dismissed because there is no supervisory liability in this case pursuant to 42 U.S.C. § 1983 and Reed's claims made against the various defendants in their "official capacities" must be dismissed as a matter of law. (*Id.*, pp. 20-21).

In response, Reed argues that summary judgment should not be granted on any of his claims. (ECF No. 191). As to the access to the courts claims, he argues that summary judgment should be denied because his failure to exhaust his administrative remedies should be excused because: (1) he was unable to access information; (2) he feared further retaliation by filing additional grievances; (3) he attempted to exhaust but his efforts were frustrated; and, (4) he was unaware of the grievance process when the was housed at NNCC. (*Id.*, pp. 1-25). In addition, Reed asserts none of these are precluded by the statute of limitations because he "because of the lost discovery material." Finally, he asserts that he did suffer "actual injury" in his direct appeals of criminal convictions, post-conviction habeas petition, and section 1983 civil rights case, as a direct result of the denial of access to the courts. As to Count IV, he asserts that this claim should not be

1    dismissed because the Seventh Judicial District in case number CV-1405060, Dept. No.

2    2, determined that these deductions were unlawful. As to Count V, he claims he was not

3    able identify "John Doe" because NDOC staff destroyed his work product. Finally, he

4    asserts that Defendants are not entitled to qualified immunity because there is existing

5    precedent that put them on notice of the deficiencies related to the prison paging system.

6    (ECF No. 191 at 1-26.)

7         In reply, Defendants reiterated several arguments related to Reed's failure to

8    exhaust and the statute of limitations and asserted that Reed's arguments in opposition

9    on these points should be rejected. (ECF 195). Defendants specifically noted Reed failed

10   to come forward with any evidence to create an issue of fact that he was, in fact, denied

11   access to the courts or that he suffered any actual injury due as a result of any limitations

12   placed on him in accessing legal materials. As to Reed's claim that he could not name

13   the "John Doe" defendant in Count V, Defendants argued that Reed actually rejected

14   delivery of the boxes of his materials, as set forth in ECF No. 174, and therefore this

15   claim should be rejected. Finally, Defendants reiterated that qualified immunity should

16   apply in this case and Reed failed to make any argument that he could sue any of the

17   Defendants in their official capacities.  (ECF No. 195 at 1-19.)

18   **II.    LEGAL STANDARD**

19        Summary judgment allows the court to avoid unnecessary trials.  *Nw. Motorcycle*

20   *Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).  The court properly

21   grants summary judgment when the record demonstrates that "there is no genuine issue

22   as to any material fact and the movant is entitled to judgment as a matter of law."

23   *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  "[T]he substantive law will identify

24   which facts are material.  Only disputes over facts that might affect the outcome of the

25   suit under the governing law will properly preclude the entry of summary judgment.

26   Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson v.*

27   *Liberty Lobby*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" only where a

28   reasonable jury could find for the nonmoving party.  *Id.*  Conclusory statements,

speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). At this stage, the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence,

1   Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as

2   to the material facts" will not defeat a properly-supported and meritorious summary

3   judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–

4   87 (1986).

5        For purposes of opposing summary judgment, the contentions offered by a *pro se*

6   litigant in motions and pleadings are admissible to the extent that the contents are based

7   on personal knowledge and set forth facts that would be admissible into evidence and

8   the litigant attested under penalty of perjury that they were true and correct.  *Jones v.*

9   *Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

10  **III.   DISCUSSION**

11       A.   <u>Denial of Access to the Courts – Counts I, II, III and VI</u>

12       Reed's amended complaint asserts various claims that assert a denial of access

13  to the courts in a variety of different ways. In the motion for summary judgment,

14  Defendants argue these claims should be dismissed under three primary theories: (1)

15  several of the claims are time barred as the events occurred outside the limitation period;

16  (2) Reed failed to exhaust his administrative remedies as several of the claims; and, (3)

17  there is no evidence Reed was, in fact, actually denied any access to the courts, or that

18  he suffered any actual injury as a result of any alleged denial of access. In this case, the

19  Court agrees Reed has failed to come forward with some evidence that would create a

20  material issue of fact as to whether he was actually denied access or that he suffered an

21  actual injury as a result. Therefore, the Court recommends that summary judgment

22  should be entered on Claims I, II, III, and VI.[1]

23       *1.   Legal Standard*

24       Prisoners have a constitutional right of access to the courts.  *Lewis v. Casey*, 518

25  U.S. 343, 346, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); *Bounds v. Smith*, 430 U.S. 817,

26

27  _____

28  [1]   The Court does not reach Defendants exhaustion or statute of limitations arguments because the lack of actual injury requires the entry of summary judgment as to all of Reed's claims related to denial of access to the courts.

821, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995). This right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828. This right "guarantees no particular methodology but rather the conferral of a capability-the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis*, 518 U.S. at 356. The touchstone is the capability of challenging convictions or conditions of confinement, rather than the capability of turning pages in a law library. *Id.* at 357.

Courts apply "no established minimum requirement for satisfying the access requirement; rather, a reviewing court should focus on whether the individual plaintiff before it has been denied meaningful access." *Vandelft v. Moses*, 31 F.3d 794, 796 (9th Cir. 1994) (quoting *Sands v. Lewis*, 886 F.2d 1166, 1169 (9th Cir. 1989) (internal quotation marks omitted). Instead, this Circuit undertakes a two-step analysis. First, courts ask if the prisoner "alleges a denial of adequate law libraries *or* adequate assistance from person trained in the law." *Id.* (quoting *Bounds*, 430 U.S. at 828) (citing *Sands*, 886 F.2d at 1169) (internal quotation marks omitted) (emphasis added in *Vandelft*). Second, courts examine whether an inmate suffered an "actual injury," which is defined as "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis*, 518 U.S. at 348-49; *see also Alvarez v. Hill*, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) (explaining that failure to show that a non-frivolous legal claim has been frustrated is fatal to a claim for denial of access to legal materials). Additionally, the right of access to the courts is only a right to bring complaints to the federal courts and not a right to discover such claims or to litigate them effectively once filed with a court. *Lewis*, 518 U.S. at 354. The right of access to the courts is limited to non-frivolous direct criminal appeals, habeas corpus proceedings, and civil rights actions under section 1983. *See Id.* at 354-55; *see also Simmons v. Sacramento County Superior Court*, 318 F.3d 1156, 1159-60 (9th Cir. 2003)

("a prisoner has no constitutional right of access to the courts to litigate an unrelated civil claim"); *Madrid v. Gomez,* 190 F.3d 990, 995 (9th Cir. 1999).

        *2.    Analysis*

        Reed's allegations related to his claims of denial of access to the courts center upon his assertions that he was denied "access to review or prepare [his] evidence (DVDs, CD-roms, video footage)," and that the "Defendants [sic] failed to assist [him] in bringing legal actions . . . in [his] case . . . [b]y having no access to law books . . . but instead [he] make[s] request[s] for cases and materials only through the 'paging' system." (ECF No. 10.) He also argues that the paging number to make a request, the law library is constantly running out of paper and ink, and that he," [has] sent in several request forms to the law library, informing them that [he is] not trained in the law, and [he] need[s] assistance from someone trained in the law." (*Id.* at 37.) However, Reed has not alleged any specific facts that demonstrate these general allegations have caused an actual injury as required by *Lewis v. Casey*, e.g. missing a filing deadline, or having a valid claim dismissed. *Lewis,* 518 U.S. at 351. Thus, Reed has failed to meet his burden to establish a material issue of fact exists related to whether he suffered an "actual injury" with respect to any of his access to the courts claims.

        a.    Direct Appeal of Criminal Cases

        Reed alleges that he was, "totally unable to attack [his] conviction on 'direct appeal' in pro per, as [he] was completely unable to support any grounds on appeal without the ability to review [his] discovery files." (ECF No. 31 at 10.) Furthermore, he alleges that he was "denied total access to the courts resulting in extreme 'prejudice' to [him] and [his] litigation efforts." (*Id.* at 13.) In the motion for summary judgment, Defendants argue that the Reed's criminal appeals were denied on independent bases. (ECF No. 183 at 13.) Additionally, Defendants point out that Reed was appointed an appellate attorney in case No. 62177. (*Id.* at 13-14.)

        Reed has not shown evidence that any alleged violation of his access to the courts impacted the outcomes of his criminal appeals. Both Case No. 62177 and 58580

were reviewed by the Nevada Supreme Court and upheld based on evidence presented at trial.  (ECF No. 183 at Exs. N, P.)  Neither case was lost because Reed failed to set forth legal citations nor because he failed to put forth counter-evidence.  (*Id.*)

In Case No. 62177, Reed had the benefit of effective assistance of counsel in at least one instance.  (ECF No. 183 at Ex. N.)  Access to an attorney is sufficient to satisfy the requirements for access to the courts.  *See Pimentel v. Fleming*, 2016 U.S. Dist. LEXIS 60092 (E.D. Cal., May 4, 1016.) (quoting *Schrier v. Halford,* 60 F.3d 1309, 1314 (8th Cir. 1995)).  Thus, on this basis alone, Reed cannot allege any denial of access to the courts claim in relation to his direct appeal in this case.

However, even if that were not the case, in denying Reed's appeal, the Nevada Supreme Court provided a detailed analysis of the testimony and evidence presented at trial and determined that a rational juror considering the totality of the evidence could have found Reed guilty.  (ECF No. 183 at Ex. N, pp. 4-6.)

With respect to Case No. 58580, the Nevada Supreme Court found that the trial testimony was sufficient for a rational juror to "infer[sic] from this evidence that Reed had dominion and control over the sharpened toothbrush and thus constructively possessed it."  (ECF No. 183 at Ex. P, pp. 1-2.) A review of the docket in this case reveals that Reed filed several items in the case – including a request for an extension of time to file his opening brief, his opening brief and a joint appendix consisting of four volumes. (*See State v. Reed,* Nevada Supreme Court Case No. 58580, Docket).

Reed has failed to identify any unraised claims, missed filing deadlines, or nonfrivolous claims that were dismissed as a result of the alleged denial of access to the courts in relation to either of these direct appeals from his underlying convictions. Instead, Reed generally asserts that he was unable to attack his conviction as a result and thus suffered an actual injury.  (ECF No. 31 at 10-13.)  As stated above, vague and conclusory allegations do not provide sufficient grounds to establish actual injury.  *Lewis*, 518 U.S. at 348-49.  Thus, Reed has failed to come forward with any evidence to create

1    an issue of fact as to whether he suffered any actual injury in his direct appeals. *See*

2    *Lewis*, 518 U.S. at 352-53.

3                              b.    Post-Conviction Habeas Petitions

4           Additionally, Reed alleges that he was "forced to decide between litigating for [his]

5    freedom and liberty in [his] on going criminal appeal case No. CR10-1574, and litigating

6    in [his] civil case . . ."  (ECF No. 31 at 18.)  Here, Defendants point out that Reed was

7    able to file "countless motions and briefs during the case" and the case was dismissed

8    and the dismissal reaffirmed on the grounds that Reed failed to identify any specific

9    deficiencies which resulted from the alleged restrictions placed upon him due to his

10   incarceration.  (ECF No. 183 at 14-15.)

11          The record shows that Reed was able to litigate case No. CR10-1574, and, in

12   fact, did so.  (ECF No. 183 at Ex. Q.)  As pointed out by Defendants, Reed filed

13   numerous motions and briefs during the case, and it was only after the filing of Reed's

14   amended complaint (ECF No. 31) that the court denied his petition in case No. CR10-

15   1574.  (*See* ECF No. 183 at Exs. Q, R.)  Thus, no actual injury had occurred at the time

16   of the filing of his amended complaint.  Additionally, on appeal the Nevada Supreme

17   Court affirmed the denial of Reed's petition stating "[t]he district court denied this claim

18   because he failed to allege sufficient facts suggesting an actual injury."  (ECF No. 183 at

19   Ex. R, pp. 3-4.)

20          Reed fails to allege any specific filing or evidence he was unable to present during

21   his post-conviction habeas petition.  Rather, he again relies on general and conclusory

22   allegations insufficient to establish actual injury.  *Lewis*, 518 U.S. at 348-49.  Therefore,

23   Reed has not demonstrated an actual injury in his post-conviction habeas petition.

24                              c.    Section 1983 Civil Rights Case

25          Finally, Reed alleges that his inability to review evidence on DVDs "taken into

26   consideration along with (E.S.P.) staff's actions of confiscating [his] (3) legal boxes

27   containing [his] 'hard copies' of . . . pre-trial transcripts and trial transcripts, and [his]

28   work product from . . . my civil case No. 3:11-cv-00066-HDM-WGC . . . result in [his]

1    total[sic] inability to present, litigate, challenge/attack . . . my civil case, with any meaning

2    and meritorious legal motions."  (ECF No. 31 at 10.)  He alleges that his inability review

3    discovery in addition to the paging system's limit of ten (10) checked out items at a time

4    were the reason he "missed the deadline(s) for amending [the] complaint, [and why he]

5    could not show cause for missing [the] deadline . . ." (*Id.* at 16.)  Defendants point out

6    that Reed's claim of denial of access to the court claim was not permitted because he

7    failed to comply with Local Rule 15-1(a) by omitting a copy of the amended complaint he

8    sought to file.  (ECF No. 183 at 15-16.) In support, Defendants cite to the docket of Case

9    3:11-cv-00066-HDM-WGC that detail the filings in the case. (*Id.*)

10        In Case No. 3:11-cv-00066-HDM-WGC, Reed was given multiple opportunities to

11   amend his § 1983 civil rights complaint.  (*See* 3:11-cv-00066-HDM-WGC at ECF No.

12   84.)  In denying his final motion to amend, the Court stated that "[t]his is [Reed's] third

13   attempt to amend his complaint.  His previous motions for leave to amend were denied

14   because [Reed] failed to comply with Local Rule 15-1(a)'s requirement that [Reed]

15   include a copy of the proposed amended complaint so that it is complete in and of itself."

16   (*Id.*) (citations omitted).  Additionally, Reed's third attempt to amend was filed after the

17   deadline to file an amended complaint, and Reed failed to demonstrate good cause for

18   filing after the deadline.  (*Id.*)

19        Reed cannot establish that he suffered actual injury with respect to his civil rights

20   action.  He was unquestionably able to file the action, and he was able to make other

21   filings in this case.  The Court's order makes it clear that Reed repeatedly failed to

22   comply with Local Rule 15-1(a) and he was out of time to amend. He does not state how

23   the paging system limit of ten (10) checked out items at a time prevented him from

24   complying with the local rule or amending his complaint in a timely fashion.  Rather, he

25   continues to rely on general and conclusory allegations, which, as stated above, are

26   insufficient to establish actual injury.  Insofar as Reed claims his inability to access the

27   materials within his legal boxes or to review the DVDs which effected his ability to amend

28   his complaint, or otherwise generally litigate his case at trial, the docket in Case No.

3:11-cv-00066-HDM-WGC proves the opposite. For example, the court minutes from February 18, 2014 explicitly indicate that Reed did receive the boxes he claims he did not receive in this case and that he did have an opportunity to review the documents. (Case No. 3:11-cv-00066-HDM-WGC, ECF No. 124). Moreover, in other instances, Reed was given access to those materials but refused to take possession. (ECF No. 74.) Defendants cannot be held liable for an injury caused by Reed's own conduct. Therefore, Reed has failed come forward with any evidence to establish that there is an issue of fact related to whether he suffered any actual injury.

### B.    Count IV - Account Withdrawals

Reed alleges that his Fourteenth Amendment due process rights were violated when ESP staff took two unauthorized deductions from his inmate trust account. (ECF No. 31 at 23.) Defendants argue that Administrative Regulation ("AR") 258 is rationally related to a legitimate penological interest in collecting court-ordered fines and special assessments, thus Reed has failed to demonstrate a due process violation. (ECF No. 183 at 17-18.)

The Due Process Clause protects inmates from unauthorized bank account deductions. *Tellis v. Godinez*, 5 F.3d 1314, 1317. While an authorized, intentional deprivation of property is actionable under the Due Process clause, neither a negligent nor intentional unauthorized deprivation of property by a prison official is actionable if a meaningful post-deprivation remedy is available for the loss. *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Quick v. Jones,* 754 F.2d 1521, 1524 (9th Cir. 1985). Nevada provides meaningful post-deprivation remedy for unauthorized deductions by permitting an inmate who has been wrongfully deprived of property to seek redress through a state civil action. NRS §§ 41.0322; 73.010; 41.031. Additionally, individuals claiming less than $7,500 in property damage can sue in small claims court. NRS §§ 4.370(1)(o); 73.010.

However, Reed had meaningful post-deprivation remedies available to him and he availed himself of them. (ECF No. 191 at Ex. K.) Reed filed a small claims case with

the Ely Township No. 1 Justice Court and the justice court held a hearing on January 16, 2014. (*Id.* at 1.) A written report was entered on January 21, 2014. (*Id.* at 2-3.) That verdict was later overturned by the Seventh Judicial District Court in Case No. CV-1405060. (*Id.* at 6-7.) There, the Court, reviewing the case *de novo*, found "[t]he plain language of AR 258.08 indicates that twenty percent (20%) of the balance in the inmate trust account shall be deducted, once, as the initial payment for various fees and assessments ordered by the judgment of conviction." (*Id.*, pp.5-6.) Because Reed only had one judgment of conviction, the Court held that only one deduction was permitted. (*Id.*, pp. 6.) Thus, it has already been determined that Defendants' deductions from Reed's inmate account were unauthorized. (ECF No.191 at Ex. K.)

However, in this instance and for purposes of Reed's claims that he was denied due process, small claims court is a meaningful post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Quick v. Jones,* 754 F.2d 1521, 1524 (9th Cir. 1985). Therefore, the unauthorized deductions did not violate the due process clause.

C.    Count V – Destruction of Property

Reed's fifth claim alleges that John Doe was responsible for the destruction of his personal photographs. (ECF No. 31 at 24.) Even after conducting discovery, Reed has not been able to identify the individual that should be substituted for the John Doe designation. (ECF No. 191 at 20-21.) Reed argues that this is due to the actions of NDOC employees destroying his "work product." (*Id.*) However, multiple extensions of time were granted so that Reed could complete his discovery. The initial discovery deadline was set for February 29, 2016 (ECF No. 104), it was then extended to August 31, 2016, per Reed's request. (ECF No. 111.) The time was then extended multiple times thereafter. (ECF Nos. 131, 132, 160.) Finally, on January 30, 2018, the Court addressed each of Reed's pending motions before the Court and ordered that discovery be completed April 2, 2018, over two years after the initial deadline. (ECF No. 174.)

Reed has had ample time and opportunity, over two years since the filing of the case, to determine the identity of John Doe. It is clear that Reed cannot determine the identity of John Doe. This count cannot proceed against a John Doe who has not been served or named. *See Gillespie v. Civiletti*, 629 F.2d 637, 642-43 (9th Cir. 1980) (use of John Doe disfavored, but allowed through the end of discovery).

D.    Official Capacity Claims

A suit against a state official in his or her official capacity is not a suit against that official, but rather a suit against the official's office. Therefore, an official acting in his or her official capacity is not a "person" under section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *accord Hale v. Arizona*, 993 F.2d 1387, 1398 (9th Cir. 1993) (en banc). Since the state and its officials are not considered "persons" within the meaning of section 1983 "they cannot be held liable under the statute for money damages." *Bank of Lake Tahoe v. Bank of Am.*, 318 F.3d 914, 918 (9th Cir. 2003).

Reed names Defendants in both their individual and official capacities. (ECF No. 31 at 2-3.) However, Defendants cannot be sued in their official capacities for monetary damages. *Bank of Am.*, 318 F.3d at 918. Therefore, to the extent that Reed seeks monetary damages, the Court recommends that all claims against Defendants in their official capacities be dismissed.

E.    Supervisory Liability

"Liability under [42 U.S.C. §] 1983 arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted); *see also Hydrick v. Hunter*, 500 F.3d 978, 988 (9th Cir. 2007). Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of respondeat superior. Thus when a named defendant holds a supervisory position, the causal link between that defendant and the claimed constitutional violation must be established. *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989). To prevail on a theory of supervisory liability, the plaintiff must establish that

the defendant either: "personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or implemented a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Id.* (internal quotations omitted).

Reed fails to allege facts showing Cox, Watson and Byrne were personally involved in Reed being deprived of a constitutional right. Reed bases his claims of supervisory liability against Cox, Watson, and Byrnes on their roles as grievance responders, and the fact that they did not give Reed access to his discovery materials. (ECF No. 31 at 10-13.) Since supervisory liability requires that a constitutional violation occurred, and this Court has already determined that no such underlying violation exists since Reed failed to demonstrate an actual injury, Cox, Watson, and Byrne should not be held liable under this theory. Additionally, Reed was given an opportunity to access his discovery materials and he refused to take possession of them. (Case 3:11-cv-00066-HDM-WGC at ECF No. 84.) Thus, this Court recommends that Cox, Watson, and Byrne be dismissed from this case.

## IV.    CONCLUSION

Based upon the foregoing, the Court recommends that Defendants' motion for summary judgment be granted. The parties are advised:

1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.    This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## V.    RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment (ECF No. 183) be **GRANTED** in its entirety.

**IT IS FURTHER RECOMMENDED** that judgment be entered and this case be closed.

**DATED**: January 18, 2019.

_____
**UNITED STATES MAGISTRATE JUDGE**